## APPEALS OF BROWN & IVES, TRUSTEES, ET AL.[1]

Docket Nos. 2569, 2570, 2711, 2727–2731.   Submitted June 8, 1925.   Decided October 20, 1925.

> Where trustees actually exercise the discretionary power vested in them and distribute only a portion of the income of the trust, paragraph (4) of subdivision (a) of section 219, Revenue Act of 1918, is inapplicable and the tax upon the income of the trust should be paid by the trustees.

---

[1] The docket titles and numbers of the appeals here decided are: Brown & Ives, Trustees, No. 2569; Brown & Ives, Trustees, No. 2570; Elizabeth Anthony Hoppin Gammell, No. 2711; Elizabeth H. G. Slater, No. 2727; Hope Goddard Iselin, Executrix of the Will of Mary Edith Goddard, No. 2728; Hope Goddard Iselin, No. 2729; Elizabeth H. G. Slater, No. 2730; and Hope Goddard Iselin, No. 2731.

*Walter A. Edwards* and *Harry P. Cross, Esqs.*, for the taxpayers.
*Edward C. Lake, Esq.*, for the Commissioner.

Before STERNHAGEN, LANSDON, GREEN, and LOVE.

All of these appeals involve the same question and are predicated upon the same facts, and the deficiencies exist only by reason of the determination of the Commissioner, as above stated.

### FINDINGS OF FACT.

As a result of the death of one of the partners of the firm of Brown & Ives, merchants, of Providence, R. I., it was agreed between the heirs of the deceased partner and the surviving partners that the assets of the partnership should be converted into cash and a trust created with the cash as its *res*. The beneficiaries under the trust agreement were to be the surviving partners and the heirs of the deceased partner. On January 1, 1838, the trust was created and the funds placed in the hands of the trustees. The fund was to be known as the "United Fund," and the interests of the respective beneficiaries therein were definitely fixed and determined.

The agreement, among other things, contained the following provision:

There shall be annually a statement of the actual condition of the "United Fund" and the dividend shall thereupon be made of the net earnings thereof, or of such part of same as may be deemed expedient.

It was further provided that any beneficiary might, upon one year's notice, or less time if the trustees deemed expedient, withdraw all or any portion of his share of the fund.

The trustees took charge of the assets and they or their successors have continued to administer the fund.

As the years passed certain of the beneficiaries withdrew their shares, and by 1879 two-thirds of the United Fund had been so withdrawn and the beneficial interests in the remainder vested in equal shares in Charlotte R. Goddard and the estate of her brother, Robert H. Ives. Thereafter various changes in ownership took place as

the result of the death of the beneficiaries, and at the beginning of 1919 there were 17 beneficiaries owning shares of various sizes.

The original trust agreement was superseded by an agreement dated December 20, 1890. Among other modifications or changes was the following relating to the distribution of the income:

\* \* \* That dividends from time to time shall be declared by the said parties of the first part in their discretion out of the net income earnings and profits of said United Fund or of such part thereof as to the said parties of the first part may seem best, payable to the proprietors of the respective parts, of said United Fund; and that all income earnings and profits not used for dividends shall be added to the principal of said United Fund, subject nevertheless to the powers of the said parties of the first part in their discretion to distribute the same or such portion thereof as they may think best by way of dividend at any time or from time to time thereafter among the said proprietors.

And it is further agreed and understood by and between the parties hereto that any person having a life interest only in any part or parts of said United Fund shall be entitled only to such dividends as may from time to time be declared as aforesaid; and that he or she shall have no right to require the parties of the first part to distribute any surplus income, earnings and profits by way of dividend or otherwise, meaning to leave all questions as to time and amount of dividends to the discretion of the parties of the first part; and that all dividends declared under the provisions of this agreement shall like interest on money lent be considered as accruing from day to day and shall be apportionable in respect of time accordingly.

The distributions under the trust agreement from year to year, starting with 1879, were as follows:

| Year. | Amount. | Year. | Amount. |
|-------|---------|-------|---------|
| 1879 | $60, 000 | 1900–1902, inclusive | $100, 800 |
| 1880 | 60, 000 | 1903–1904, inclusive | 117, 600 |
| 1881 | 119, 000 | 1905 | 130, 000 |
| 1882–1897, inclusive | 70, 000 | 1906–1907, inclusive | 144, 000 |
| 1898 | 77, 000 | 1908–1917, inclusive | 168, 000 |
| 1899 | 84, 000 | 1918–1920, inclusive | 193, 200 |

During the years above referred to the income increased from $73,918.77 to a maximum of $257,207 in 1919. In only one year, 1881, was the entire income distributed and in the other years the undistributed income ranged from $13,918.77 to $91,831.44. So far as the record discloses, all distributions were made from current earnings.

All of the trustees have been beneficiaries. The policy of the trust from its inception has been to distribute annually a substantial portion of its earnings. The trustees have always felt that there was an obligation on them to so distribute the income and have at all times given serious consideration to the recommendations of the beneficiaries in respect to increases.

Two of the former beneficiaries, both of whom were trustees, have made provisions in their wills for the payment by the trust, annually

to designated heirs under the will, of the income distributed on the shares held by the deceased beneficiary.

For the calendar year 1919 the trustees made income-tax returns on Forms 1041 and 1040. In the return on Form 1041 was shown income amounting to $193,510, being the amount actually distributed to the beneficiaries, and the return on Form 1040 included only the balance of the net income of the trust for that year and it was upon this amount only that the trustees paid tax.

On June 1, 1920, a new trust agreement was drawn up and the deficiency for that year relates only to the income of the trust from January 1 to May 31, and as to this income the procedure followed was the same as in 1919.

DECISION.

The determination of the Commissioner in each of the above entitled appeals is approved.

OPINION.

GREEN: It must be apparent at the outset that the trustees had, during the years in question, the absolute right under the trust agreement to distribute all or any part of the trust fund or the income thereof. We have heretofore held in the *Appeal of William E. Scripps*, 1 B. T. A. 491, that discretion on the part of the trustees to distribute is not the sole test and that all of the facts and circumstances must be considered. In that appeal, as regards distribution, there were three classes of income, two of which the trustees were required to distribute and the third of which they were to distribute unless used for the benefit of the corporations named. In all classes of income the trustees in each year distributed the whole thereof.

The present appeals are in many respects similar to the *Scripps Appeal*. There are, however, several material differences.

While it is true that income from this trust was distributed every year, only in one year was the whole thereof distributed. As the income from the trust grew as the result, in part at least, of the withholding annually of a part of the earnings, the distributions to the beneficiaries increased. The earnings in no two years were the same. The percentage of the income distributed varied from year to year and the distribution was of a definite sum of money rather than of a definite percentage of the income of the trust. The trustees were called upon to determine the amount of the income which should be distributed, and in so determining they found it advisable and expedient from time to time to increase the amount distributed. In so doing they exercised the discretionary power vested in them by the trust agreement, and this, we take it, is the true test, and in this lies the distinction between these appeals and the *Scripps Appeal*,

where the discretionary power of the trustees lay dormant and unexercised through all the years.

On behalf of the various beneficiaries it is argued that the share of each was held under a separate and distinct trust and that all of the income should be taxed to the owner thereof. A careful study· of the trust instrument convinces us that this contention is unsound and without basis.

It is also argued that the Commissioner's determination that the entire income of the trust should be taxed to the trustees results in inequality and hardship, in that had the same income been received by the beneficiaries as individuals the tax would have been materially lower. This Board has no power to equalize or reduce taxes and must determine cases in accordance with the statute. Congress alone can remedy the situation to which the taxpayers object. The income is not within the provisions of paragraph (4) of subdivision (a) of section 219, and the tax thereon must be paid by the fiduciaries.

TRUSSELL and PHILLIPS dissenting.